## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROSSITZA LAZOVA, M.D.,** | : | **CIVIL ACTION NO.:** |
| | : | |
| **Plaintiff,** | : | **3:15-cv-1834 (___)** |
| | : | |
| **v.** | : | |
| | : | |
| **YALE UNIVERSITY,** | : | |
| | : | |
| **Defendant.** | : | **December 17, 2015** |
| | : | |

## COMPLAINT

### I.      INTRODUCTION

1.      The plaintiff, Rossitza Lazova, M.D., Associate Professor of Dermatology and of Pathology at the Yale School of Medicine, brings claims for violations of Title VII of the federal Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Connecticut Fair Employment Practices Act (the "CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq*., stemming from Yale's retaliation against her for her opposition to Yale's unlawful sex discrimination.

2.      The plaintiff demands a jury trial on all claims so triable.

### II.      PARTIES

3.      The plaintiff, Rossitza Lazova, M.D., is a natural person and a resident of Branford, Connecticut.

4.      Dr. Lazova is female.

5.      The defendant, Yale University ("Yale"), is a non-profit university located in New Haven, Connecticut.

6.      Yale employs more than 15 or more employees in Connecticut.

7.     At all relevant times, Yale was Dr. Lazova's employer within the meaning of Title VII and the CEFPA.

8.     The Yale School of Medicine ("YSM" or "the Medical School") is the graduate medical school at Yale University.

## III.     JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the asserted claims occurred herein.

11.     This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because they form part of the same case or controversy as the federal law claims.

## IV.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     The plaintiff filed complaints with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the federal Equal Employment Opportunity Commission ("EEOC") alleging retaliation for her complaints about a discriminatory denial of promotion based on her sex.  The CHRO and EEOC complaints were filed in a timely manner insofar as they were filed within 180 days of the date that the plaintiff received notice of her denial of promotion.

13.     The plaintiff received a Right to Sue letter from the CHRO, dated October 6, 2015.  The plaintiff has filed this complaint within 90 days of her receipt of the Right to Sue letter.

## V.     STATEMENT OF FACTS

### A.     The Yale School of Medicine Has a History of Female Underrepresentation among Its Full Professors; Fear of Retaliation Is an Aggravating Factor.

14.     According to the Report of the Yale Diversity Summit, which collected data about the Yale School of Medicine faculty from the fall of 2013, 63.5 percent of YSM's ladder faculty members were male; 36.5 percent were female.  Of YSM's thirty department chairs, 28 were men; two were women.

15.     As of September 2014, the Yale School of Medicine had 468 full professors: 95 were female; 373 were male.

16.     In or about December 2014, the Dean of the Yale School of Medicine, Robert J. Alpern, M.D., told the *Yale Daily News* that, although 50 percent of YSM's assistant professors are female, the percentage of full YSM professors who are female is only 20 percent.  He acknowledged that YSM's method for hiring, which included placing many women on hiring committees, had not been working and admitted that he needed to develop a new plan.

17.     On July 15, 2015, the Ad Hoc Task Force on Gender Equity at the Yale School of Medicine, which had been created in October 2014, issued its Final Report and Recommendations.

18.     The Report explained the need for the Task Force's existence:

> Representation of women among junior faculty has been nearly comparable to men for over a decade, yet women remain under-represented at higher ranks and in positions of leadership throughout Yale School of Medicine. In this context, many YSM faculty have expressed long-standing concerns over impediments to career advancement of women, [including] a work environment that is perceived as inhospitable to women.  Despite several committees and working groups formed over the past 2 decades to address these concerns, progress toward improving gender equity and the work climate has been slow.

19.     One hundred forty-one YSM faculty, students, and staff had submitted anonymous comments to the Task Force.

20.     Two of the "major themes" that emerged from the Task Force's analysis of those comments were "concerns for psychological safety (broadly defined as the feeling that one can express oneself without concern for retaliation) and organizational structure, including concerns regarding the underrepresentation of women and minorities and the School's capacity to promote gender equity."

**B.     The Promotion Process within the Department of Dermatology at the Yale School of Medicine**

21.     The Yale University Faculty Handbook states the standard for promotion to the rank of full professor on YSM's Clinician-Educator Track:

> Candidates for appointment or promotion to the rank of professor in the Clinician-Educator Track must be national or international leaders in their fields, as evidenced by scholarship that has had a national impact on clinical medicine, public health, or education, as well as sustained excellence in patient care and teaching. The strength of commitment conferred by appointment to the rank of professor mandates that candidates in this track have attained the same level of achievement in their domains as candidates for professor in the other ladder tracks.

22.     In 2012, the YSM Department of Dermatology ("the Department") had six senior faculty members, all of whom comprised the Promotion Committee. Four of the six comprised the Mentorship Committee.

23.     At all relevant times discussed herein, the Department's Mentorship Committee consisted of Jean L. Bolognia, M.D.; David Leffell, , M.D.; Jennifer Madison McNiff, , M.D.; and Robert Tigelaar, M.D.

24.     At all relevant times discussed herein, the Chair of the Department was Richard L. Edelson, M.D.

25.     The Mentorship Committee meets with assistant and associate professors on an annual basis, with the ostensible goal of reviewing their accomplishments and providing guidance on how to achieve promotion.

26.     Dr. Lazova has been told by the Mentorship Committee that, thereafter, the Mentorship Committee makes a recommendation to the Chair of the Department about whether each assistant or associate professor should be promoted.

27.     Dr. Lazova has been told by the Mentorship Committee that the Mentorship Committee's recommendation is reviewed by the Chair.  If the Chair accepts the Mentorship Committee's recommendation for promotion or if he rejects the Mentorship Committee's recommendation against promotion, the Chair then puts the applicant's candidacy to a vote of the Department's Promotion Committee.

28.     Upon information and belief, in Dr. Lazova's nearly 19 years at Yale, no associate professor in the Department of Dermatology who has received the endorsement of the Mentorship Committee and the Department Chair for promotion to the rank of full professor has failed to receive such a promotion.

29.     Upon information and belief, Dr. Lazova has served as an associate professor in the Department longer than any other associate professor without being promoted to full professor.

**C.     Dr. Lazova's Experience and Accomplishments**

30.     Dr. Lazova is an Associate Professor of Dermatology and of Pathology at the Yale School of Medicine, a position she has held since July 1, 2003.

31.     From 1997 to 2003, Dr. Lazova was an Assistant Professor of Dermatology at YSM.

32.     In total, Dr. Lazova has been employed by YSM for almost 19 years.

33.     Dr. Lazova has been an associate professor at YSM longer than any other professor in YSM's Department of Dermatology.

5

34.     In addition to her teaching and research responsibilities, Dr. Lazova is also an Attending Physician at Yale-New Haven Hospital in New Haven, Connecticut and a Consulting Pathologist and Dermatopathologist at the Veterans Affairs Medical Center in West Haven, Connecticut.

35.     Since 2002, Dr. Lazova has been the Director of YSM's Dermatopathology Residency and Fellowship Program.

36.     YSM's Dermatopathology Residency and Fellowship Program is widely regarded as one of the most successful and sought-after dermatopathology fellowships in the United States.

37.     Since 2013, Dr. Lazova has served as the Vice President of the International Society of Dermatopathology (ISDP).  In that capacity, she is a member of ISDP's Board of Directors as well as its Program Committee, which creates the scientific programs for ISDP meetings.  Dr. Lazova also serves as the ISDP's liaison to the International Society of Dermatology and the International League of Dermatological Societies.

38.     Dr. Lazova previously served on the Board of Directors of the American Society of Dermatopathology (ASDP), as well as Chair of ASDP's Membership and Mentorship Committees.

39.     Dr. Lazova has authored more than 80 publications within her field of scholarship.

40.     Dr. Lazova is the co-author of a textbook on Mohs surgery that is considered to be the seminal textbook on that subject.

41.     Dr. Lazova is a co-author of a textbook entitled *Differential Diagnosis in Dermatopathology II*, together with the late A. Bernard Ackerman, M.D., who is considered to have been the world's leading dermatopathologist.

42.     Dr. Lazova has lectured throughout the United States and the world and is nationally and internationally recognized in her field.

43.     Dr. Lazova was the first physician in the world to analyze melanocytic lesions using mass spectrometry.

**D.     In 2012, After the Department Chair Promises Dr. Lazova that She Is "Next in Line" for Promotion to Full Professor, the Department Promotes a Male with Less Seniority and Fewer Credentials Than Dr. Lazova.**

44.     In the summer of 2011, Dr. Lazova spoke with Dr. Edelson and asked him whether she should apply for a promotion that fall or wait another year to finish her research in mass spectrometry.  Dr. Edelson advised Dr. Lazova to wait until 2012 and assured her that she was "next in line" for a promotion.  He also told Dr. Lazova that "there is no doubt" she could lead the dermatopathology section of any medical school in the country.

45.     On or about January 25, 2012, Dr. Edelson told Dr. Lazova that Richard Joseph Antaya, M.D., was going to be promoted to full professor.

46.     Dr. Antaya is male.

47.     At the time of his promotion, Dr. Antaya had two years less seniority as an associate professor than Dr. Lazova.

48.     At the time of his promotion, Dr. Antaya's academic and scientific career was less distinguished than Dr. Lazova's.

49.     At the time of Dr. Antaya's promotion, Dr. Lazova had 55 scholarly publications in her field; Dr. Antaya had only 42.

50.     Dr. Edelson explained to Dr. Lazova that Dr. Antaya was asked to start a pediatric dermatology fellowship and that he felt the director of a fellowship should be a full professor.  Dr. Lazova replied that she had been a director of one of the most successful and sought after

dermatopathology fellowships in the country for more than ten years and that she was yet to be a full professor.  Dr. Edelson did not reply.

51.     According to Dr. Antaya, the Department's Mentorship Committee had given him a "list of things to do" in order to achieve promotion to full professor.  He then took a six-month sabbatical, completed everything on the list, and applied.

52.     In contrast to Dr. Antaya's experience, the Mentorship Committee had never given Dr. Lazova specific guidance as to what she needed to do to achieve promotion.

**E.     Dr. Lazova Files a Gender Discrimination Complaint with the Connecticut Commission on Human Rights and Opportunities; YSM Responds with Hostility.**

53.     On or about April 23, 2012, Dr. Lazova filed a complaint with the Commission on Human Rights and Opportunities ("CHRO") against Yale alleging that the YSM's failure to promote her to the rank of full professor constituted unlawful discrimination on the basis of her gender (the "gender discrimination complaint").

54.     Following the filing of Dr. Lazova's gender discrimination complaint, the senior faculty of YSM treated her with hostility, including lambasting her for filing it and repeatedly pressuring her to drop it.

55.     In the fall of 2012, Dr. Lazova applied for promotion to full professor.

56.     The Promotion Committee voted not to promote her.

57.     The reasons given for the denial of Dr. Lazova's promotion were that a single review article did not mention her research on Spitzoid lesions and that she did not have consultations sent to her.

58.     Dr. Lazova's research on Spitzoid lesions was published after the review article in question, so her research could not have been included in the review article.

59.     Dr. Lazova indeed did have consultations sent to her but had never been asked to provide information concerning her consultations, nor had she been advised that the number of consults was a factor in consideration for promotion.

60.     On March 8, 2013, Dr. David Leffell, a full professor in the Department, told Dr. Lazova that her filing of the gender discrimination complaint "was a big mistake" and "deadly" for her relationships with the members of the Department.

61.     Dr. Leffell further stated to Dr. Lazova that, if she did not withdraw the gender discrimination complaint and instead chose to file a lawsuit in court, she "would have to leave."

62.     When Dr. Lazova asked him why she would have to leave the Department, he replied: "Do you know anybody who has won a lawsuit and stayed?"

63.     In the summer of 2013, Dr. Lazova met with Dr. Edelson and two other full professors in the Department, Dr. Jean L. Bolognia and Dr. Jennifer Madison McNiff.

64.     During the meeting, Dr. Lazova once again expressed her desire to be considered for a promotion to full professor.  Dr. Edelson stated that the only criterion that would be used to evaluate her candidacy for a promotion would be whether the senior faculty considered her to be a "go to" person.

65.     Dr. Lazova had never heard of such a criterion before and asked what it meant. Dr. Bolognia explained, in substance:  "It means that, if I have a difficult case, I would turn to you to review the case, rather than someone else."  Dr. Edelson added that the clinical faculty reported that they did not regularly seek out Dr. Lazova's opinion on difficult cases.

66.     Fearing that, with such a subjective criterion, her application for promotion would be futile, Dr. Lazova did not apply for a promotion in 2013.

67.     On March 11, 2014, Dr. Lazova met again with Dr. Edelson.  He stated, in substance:  "The first thing that needs to be done for us to be unencumbered is for Dr. Lazova's counsel to stop and notify the University that there is no longer any action."

68.     Referring to Dr. Lazova's gender discrimination complaint, Dr. Edelson stated, in substance, that the complaint inhibited conversations within YSM and limited the faculty's capacity to operate under normal circumstances.

69.     Dr. Edelson said that Dr. Lazova's legal action effectively altered the promotion review process.  He said that her belief that she could initiate legal action against Yale and not have it impact her relationship with the people she named in the claim, including him and the members of the Department's Promotion Committee, reflected "bad common sense."

70.     Dr. Edelson told Dr. Lazova that she had a choice: she could continue her legal action, knowing that it inhibited and changed her interactions with everybody at YSM, including its leadership; or she could drop her lawsuit, which would "simplify [her] existence."

71.     Dr. Lazova did not drop her gender discrimination complaint.

**F.      Dr. Lazova Again Applies for Promotion to Full Professor in 2014 and Again Is Rejected.  The Decisionmakers Cite a Purported Lack of "Collegiality"; Refer to Her as "Adversarial"; and Describe Her Gender Discrimination Complaint as the "Elephant in the Room."**

72.     In or about December 2012, following the denial of Dr Lazova's first application for promotion to full professorship, the YSM Department of Dermatology's Mentorship Committee advised Dr. Lazova that she would qualify for a promotion if she demonstrated scholarship that had national and international impact on clinical medicine and had distinguished herself as a leading expert in melanocytic lesions and Spitzoid neoplasms.

73.     Between Dr. Lazova's denial of promotion in 2012 and September 30, 2014, she had published extensively in her field and done everything the Mentorship Committee had said would fully qualify her for promotion.

74.     In addition to publishing fourteen peer-reviewed articles and serving as co-author on a textbook on Mohs histopathology, she also received four grants (as either principal investigator, co-principal investigator, or collaborator), with a total value of more than $2 million; given approximately 15 peer-reviewed presentations at national and international dermatology society meetings; given over 20 other presentations at such meetings; become an associate editor of the journal *Dermatopathology*; joined the editorial boards of three other medical journals and served as a peer reviewer for seven more; and become the vice president of the International Society of Dermatopathology.

75.     In the fall of 2014, Dr. Lazova once again applied for promotion to full professor in the Department.

76.     On September 30, 2014, her application was again denied.

77.     The notes from the meeting of the Promotion Committee contained the statement: "Collegial issues – major."

78.     On January 7, 2015, Dr. Lazova met with the Mentorship Committee, including Drs. Robert Tigelaar, Jennifer McNiff, Jean Bolognia and David Leffell, to discuss why her application for promotion had been rejected.

79.     Dr. Tigelaar stated that Dr. Lazova was denied promotion this time because of a lack of "collegiality."  He stated that, if one looked only at the numbers of her publications and the numbers of her presentations, one would say that her promotion was "a slam dunk."  He added, however, that it was "more than that."

80.     Dr. Leffell stated that there must be a collaborative and collegial environment and that Dr. Lazova had created an "adversarial relationship" in the department.  He also referred to what he called "the elephant in the room."  Dr. McNiff repeated that Dr. Lazova was "adversarial" and also referred to her gender discrimination complaint as "the elephant in the room."

81.     Dr. Lazova has been praised for her collegiality by the leading experts in the field of dermatopathology throughout the world.

### G.      A Female Professor Who Has Far Fewer Publications Than Dr. Lazova and Is Eight Years Her Junior Is Promoted to Full Professor.

82.     At the same September 2014 meeting of the Department's Promotion Committee at which Dr. Lazova was denied promotion, YSM Associate Professor Christine J. Ko, M.D., was selected for promotion to full professor.

83.     At the time, Dr. Ko had eight years less experience and far fewer publications and presentations than Dr. Lazova.

84.     In contrast to Dr. Lazova, Dr. Ko does not have an area of expertise, a criterion which the Mentorship Committee had identified was important in a candidate's application for full professor.

85.     In contrast to Dr. Lazova, Dr. Ko has not had consultations sent to her.

86.     Dr. Ko was selected for promotion over two male faculty members in YSM's Department of Dermatology who had more experience and accomplishments than Dr. Ko but less experience and accomplishments than Dr. Lazova.

87.     On February 3, 2015, Dr. Lazova met with Dr. Edelson.  She asked him why Dr. Ko had been promoted and she had not, and she asked about the objective criteria on which the decision was based.

88.     Dr. Edelson replied that it was not Dr. Lazova's business to compare herself to Dr. Ko.  He further stated, in substance, that he was worried at Dr. Lazova's effort to "push for answers."  He described that behavior as "confrontational" and "not productive."

89.     Dr. Edelson further stated that, prior to Dr. Lazova's filing of the gender discrimination complaint, YSM's Department of Dermatology had never used objective criteria to evaluate candidates for promotion.  He said that Dr. Lazova's demand for objective information was making it difficult for them to think of her as a person who processed information in the way that a professor should.

**H.     A YSM Review Committee Confirms that Dr. Lazova's Gender Discrimination Complaint Negatively Impacted Her Subsequent Application for Promotion.**

90.     On January 20, 2015, Dr. Lazova filed a complaint with YSM's Dean pursuant to Yale's Faculty Handbook.  The complaint requested that Dean Alpern review the Department's September 2014 decision not to recommend Dr. Lazova for promotion to full professor. Dr. Lazova stated her belief that the decision was not based on objective criteria.

91.     The Dean referred Dr. Lazova's complaint to a Review Committee.

92.     The members of the Review Committee were YSM professors Diane McMahon-Pratt, Ph.D.; Paula B. Kavathas, Ph.D.; and James D. Macy, Jr., D.V.M.

93.     The Review Committee's charge, according to the Report, was to determine "whether the decision regarding Dr. Lazova's faculty appointment violated University Policy, and whether the appointment was not fairly or adequately considered or whether the decision was discriminatory."

94.     Following its investigation, on or about May 1, 2015, the Review Committee issued a Report with its findings and conclusions.

95.     The Report's "Findings of Fact" stated, in pertinent part:

The interactions between Dr. Lazova and senior faculty in the Department have significantly deteriorated since 2012; there were several examples provided where the interactions between Dr. Lazova and members of her department were suboptimal and co-authorship on research papers with her colleagues dropped off after 2012 . . . .  <u>The allegations made by Professor Lazova in her external CHRO complaint against the University had further strained the relationship between Dr. Lazova and the senior faculty in Dermatology in the two years preceding the vote of 2014.</u>  The faculty members appeared unaware of the efforts, discussed above, that Dr. Lazova had in fact made to resolve her issues internally.  This situation negatively impacted the perception of Dr. Lazova as a member of the department and hindered efforts that could have otherwise been leveraged towards building a consensus towards a path forward for Dr. Lazova within the department.

. . . .

<u>In 2013 the 'go to' person was brought up as a criterion for promotion, which was shifting the goalpost.</u>  If one uses the faculty handbook and CV comparisons as the dominant criteria, which is what Dr. Lazova relied on, the advancement of Dr. Christine Ko, a much more junior dermatologist and dermatopathologist, furthered a perception of unfairness.  In addition, we did hear from two Yale senior faculty with relevant expertise (not involved in voting in Dermatology) that they considered Dr. Lazova an expert in the area of Spitzoid neoplasms and an excellent dermatopathologist.

(Emphasis added.)

96.     Referencing, among other factors, Dr. Lazova's gender discrimination complaint, the Committee found that "the circumstances leading up to the 2014 decision created a climate in which Dr. Lazova's promotion request could not be fairly considered."

97.     The Review Committee ultimately concluded:

[T]he criteria for promotion that was raised in this case and that was instituted about two years ago in the department, as the 'go to' person as a measure of clinical excellence, represented a shift in the balance of objective and subjective promotion criteria.  <u>The deterioration of a collegial climate[,] coupled with the subjective 'go to' criteria, created a barrier to fair consideration for promotion.</u>

(Emphasis added.)

98.     In an August 27, 2015, letter to Dr. Lazova, Dean Alpern summarized the Review Committee's findings.  He then stated that, in light of Dr. Lazova's re-application for promotion

14

that fall, he wanted to "clarify the School of Medicine's standards for promotion to professor on the Clinician-Educator Track."

99.     This "clarification" consisted solely of quoting verbatim from the Yale Faculty Handbook.

100.    Neither Dean Alpern nor any other member of Yale's senior management took any action to address the Review Committee's concern about the "strained relationship" between Dr. Lazova and the Department's senior faculty following Dr. Lazova's gender discrimination complaint or the Review Committee's finding that this "climate" prevented Dr. Lazova's promotion request from being "fairly considered."

> **I.     In the Fall of 2015, Dr. Lazova Once Again Applies for Promotion to Full Professor, This Time with Scores of Letters from National and International Leaders in Dermatology and Dermatopathology Lauding Her Professional Status and Accomplishments.  Once Again, Her Application Is Rejected.**

101.    In September 2015, Dr. Lazova applied once again for a promotion to full professor.

102.    According to the Review Committee's Report, the reasons that the Department's senior faculty reported to justify their rejection of Dr. Lazova's 2014 application included "lack of clinical excellence commensurate with full professor, insufficient scientific rigor in research methodology, and lack of a unique programmatic role in the department."

103.    In the year since Dr. Lazova's last request for promotion, she had served as co-author for three additional peer-reviewed articles, in addition to numerous other publications; given multiple presentations to the International Society of Dermatopathology, the American Society of Dermatopathology, the American Academy of Dermatology, and the World Congress of Dermatology, including three peer-reviewed presentations; become a member of the editorial boards of the *International Journal of Dermatology and Skin Biology* and the *International*

*Journal of Dermatology and Clinical Research*; and obtained a preliminary patent involving the mass spectrometry imaging of benign melanocytic nevi and malignant melanomas.

104.    In addition, in support of her 2015 application, Dr. Lazova submitted to the Department more than four dozen of letters of reference and support from national and international leaders in dermatopathology.

105.    B. Jack Longley, M.D., Frederic Mohs Professor in the Department of Dermatology and the University of Wisconsin School of Medicine and Public Health, wrote, in relevant part:

> I was recently a member of an ad hoc committee evaluating another Dermatopathologist who was successfully promoted to full professor at the Massachusetts General Hospital of the Harvard Medical School.  The process involved comparing the candidate with other Dermatopathologists so I am up to date on achievements by top academic Dermatopathologists.   I have no question that Dr. Lazova is well qualified to be in that select group of Professors of Dermatopathology.
>
>         . . . .
>
> … [I]n her position of Director of the Yale Dermatopathology fellowship training program for over 12 years she has taught and mentored a number of young academics, including some who are currently on the Yale faculty.  The Yale Dermatopathology fellowship has been considered an outstanding and much sought after fellowship experience.
>
>         Dr. Lazova has also authored over 80 publications, an outstanding level of productivity for a dermatopathologist.  In addition, she has had past and current support as co-investigator on a number of NIH extramural grants, and has served as a principal investigator on several of her own grants, a very unusual achievement for a Dermatopathologist.  These accomplishments place her in a very small group of academic and experimental dermatopathologists, probably less than 10 in the country.

106.    Wilma F. Bergfeld, M.D., Co-Director of Dermatopathology at the Cleveland Clinic, wrote, in relevant part:

> I consider Dr. Lazova to be a leader in academic Dermatopathology and I rank her as tops in the field of Dermatopathology.  She had done and continues to do ground breaking research in the area of Spitzoid melanocytic neoplasms applying mass spectrometry as an ancillary diagnostic test.
>         . . . .

16

Currently, Rossitza is the Director of [the] Yale Dermatopathology fellowship, which is considered one of the best nationally and internationally. . . .

> . . . .

I feel that Rossitza is an outstanding member of the academic community. She is [a] collegial colleague, a team player, devoted physician and is well liked.

In summary, I sincerely believe that Dr. Rossitza Lazova meets and exceeds the criteria to be appointed a Full Professor of Dermatopathology, Yale University.

107.    Hideko Kamino, M.D., Professor of Dermatology and Pathology at the New York

University Medical Center, wrote, in relevant part:

The Dermatopathology Fellowship program at Yale University, which is directed by Dr. Lazova, is highly rated among the academic institutions in the United States, and is sought after by top-ranked candidates.

Dr. Lazova's academic work meets all the criteria for promotion at the level of Professor in the Clinician Educator track at New York University Medical Center.

. . . Yale University is fortunate to have Dr. Lazova among its faculty and I hope that she will be granted a very well deserved promotion to Professor in the Clinician Educator track.

108.    Glynis Scott, M.D., Professor of Dermatology and Pathology at the University of

Rochester Medical Center, wrote, in relevant part:

[Dr. Lazova has] established a registry for borderline Spitz's nevi, the first of its kind. Developing a registry is a truly daunting task that requires excellent communication skills with colleagues near and far.  To convince diverse pathologists to send you their cases require[s] tact, sensitivity and persistence, all of which Rossitza possesses. These academic achievements are truly outstanding. . . .

Rossitza runs one of the most competitive and highly sought after fellowship programs in dermatopathology. . . .

. . . I send [Dr. Lazova] my most difficult Spitz's nevi for her interpretation, and I have enormous respect for her ability to think outside the box, and to carve out a research program that is quite different from the more traditional case studies that academic dermatopathologists pursue.  I sat on the promotion committee for the University of Rochester for several years, and serve as an ad hoc reviewer for the committee.  Rossitza would have absolutely no problem being promoted to professor

in our clinician/teacher/ scholar track.  I am frankly amazed at the lengths she has had to go through to obtain this promotion at Yale, which she so obviously deserves.

109.    Jane M. Grant-Kels, M.D., Professor  and Chair of the Department of Dermatology

and the University of Connecticut Health Center, wrote, in relevant part:

> Rossitza is considered one of the best role models of excellence in the field of dermatopathology due to her outstanding acumen as a clinical dermatopathologist, numerous contributions to the literature and her abilities as a teacher. . . .  She is warm, friendly, and a wonderful role model for the Department of Dermatology and Pathology at Yale University.

> Dr. Lazova's renown as a teacher is obvious when one has the opportunity to peruse her CV and the places she has been asked to lecture: France, Argentina, Spain, Brazil, Bulgaria, Italy, Bolivia, Switzerland, Chile, Austria, Turkey, Thailand, India, England, Netherlands, Czech Republic, and Korea internationally plus Texas, Washington D.C., California, Louisiana, Arizona, Illinois, Florida, New York, Tennessee, Washington, Georgia, Maryland, Massachusetts, Arizona and CT nationally.  At each of these national and international well attended prestigious meetings, Dr. Lazova contributed a significant part of the curriculum and received rave reviews from her audiences. . . .

> Dr. Lazova is considered a leader in academic dermatopathology. . . .

> . . . .

. . . Her work on differentiating Spitzoid melanomas from Spitz nevi have resulted in extremely important new data that will help to save lives.

> I have had the good fortune of directing a dermatopathology course at the annual [American Academy of Dermatology] meetings for four years.  Each and every year I asked Dr. Lazova to participate in the course.  Her presentations were excellent displaying a tremendous amount of thought, clarity to often complicated disease processes, and insight. . . .

> Rossitza is an outstanding citizen of the academic community.  She is extraordinarily well liked because of her willingness to participate in dermatopathology symposia and collaborative publications.  Whenever asked, Rossitza can be counted on to do her part with excellence, good cheer, accuracy, and timeliness.

110.    Jorge L. Sanchez, M.D., Professor of Dermatology (and President of the Board of

Governors) at the University of Puerto Rico, wrote, in relevant part:

> [Dr. Lazova's] development in the field of melanocytic lesions (especially "Spitzoid"), as seen in her national and international presentation[s] and publications[,] has [been] recognized by the experts in the field.  She has the highest ethical values and enjoys the respect and admiration of her friends and peers.

> . . . She meets all the criteria for the promotion to Professor. I was chairman of the Department of Dermatology of the University of Puerto Rico School of Medicine for 30 years[.]  I would [have] proudly recommended her for the appointment many years ago.

111.    M. Angelica Selim, M.D., Professor of Pathology and Dermatology at Duke University Medical Center, wrote, in relevant part:

> [Dr. Lazova] is truly one of the leaders in the field of Dermatopathology.  She is an expert in the field of melanocytic neoplasms and Spitzoid lesions and I myself have sent her cases in consultation.

> . . . .

> On a personal level, Dr. Lazova has been an inspiring model for many female medical academics.  She personifies all that one expects in an academician and belongs to a small and select group of renowned female dermatopathologists.

> . . . .

> If Dr. Lazova's career is judged objectively, it is obvious that she is one of the best dermatopathologists in the field. . . . Her accomplishments would unquestionably make her an obvious candidate for full professorship at my own institution of Duke University long ago.

112.    Sumaira Z. Aasi, M.D., Director of Mohs and Dermatologic Surgery and Clinical Professor of Dermatology at Stanford University School of Medicine, wrote, in relevant part:

> I cannot imagine a more hard-working, compassionate, knowledgeable colleague who is a consummate perfectionist. . . .  To give you a personal sense of how much I value [Dr. Lazova's] expert skills, I have sent her patient cases across the country from Stanford during my four years here when I felt that a second opinion was warranted. . . .

> Dr. Lazova is an internationally recognized leader in the field of dermatopathology. . . .

19

113.    Valencia Thomas, M.D., Associate Professor of Dermatopathology at the University

of Texas Health Science Center and M.D. Anderson Cancer Center, wrote, in relevant part:

> Even with variations in the promotions and tenure process, Dr. Lazova has far
> surpassed the criteria for promotion to the rank of Professor at most academic
> institutions.  [She is] a unique leader in the field of dermatopathology with national
> and international recognition. . . .
>
> . . . .
>
> Simply put, Dr. Lazova needs no introduction in the field of
> dermatopathology.  Her international reputation was solidified through her ground-
> breaking work in the field of Spitzoid melanoma, founding both the International
> Spitzoid Neoplasm Study Group as well as the Yale Spitzoid Neoplasm Repository. .
> . .

114.    H. Nicholas Shamma, M.D., Laboratory Director of the American Dermatopathology

Laboratory, wrote, in relevant part:

> Yale Dermatopathology fellowship under [Dr. Lazova's] leadership is one of the best
> in the country.
>
> . . . I would rank her in the top 5% of dermatopathologists in the world. . . .
>
> There is no doubt in my mind that she deserves to be a full professor at Yale.
> If she is not a full professor who should be?

115.    John C. Maize, Sr., M.D., Professor of Dermatology & Dermatologic Surgery at the

Medical University of South Carolina, wrote, in relevant part:

> I am very familiar with [Dr. Lazova's] body of work and with her administrative and
> teaching skills.  Dr. Lazova has truly distinguished herself in the field of
> dermatopathology. . . . I have personally heard her speak on many occasions.  Her
> presentations are always informative and well-organized and well-presented.  She has
> garnered the respect of dermatologists, pathologists and dermatopathologists in this
> country and abroad.  She is considered an expert in the field of melanocytic tumors,
> especially Spitz nevi and their simulants.
>
> . . . She is recognized as a leader in the field of dermatopathology.

116.    Professor Daniela Massi of the Universita degli Studi Firenze in Florence, Italy

wrote, in relevant part:

I organized the XXXIV[th] Symposium of [the] International Society of Dermatopathology in Florence, Italy, in September of 2013.  I invited Dr. Lazova to chair a session [called] "New molecular tests for melanoma diagnosis and therapy" and to lead a special Videomicroscopy tutorial on Spitzoid melanocytic lesions based on her expertise in that field.  Her tutorial was oversubscribed.  There were people waiting in the hall to try to attend her session because the room was full to its maximum.  The evaluations about her session were outstanding! . . .  Her original research using mass spectrometry in the diagnosis of Spitz nevus and [its] mimic, Spitzoid melanoma[,] is groundbreaking. . . .

. . . [S]he is one of the best dermatopathologists in the world.  If she were at my institution she would without a doubt be promoted to professor!

117.    W. Weyers, M.D., Co-Director of the Center for Dermatopathology in Freiburg,

Germany, wrote, in relevant part:

[For] many years, Dr. Lazova has been a major force in [dermatopathology], not only because of her original scientific work and her engagement in scientific societies but also, and especially, because of a critical turn of mind evidenced in many lectures and discussions, and because of her capability of interacting with colleagues in a warm, comforting fashion.

. . . .

Dr. Lazova is recognized worldwide especially for her expertise in melanocytic neoplasms.  This field is the most important aspect of dermatopathology because of the frequency of those neoplasms and the potentially serious consequences of misdiagnoses. . . .

I believe that Dr. Lazova is currently among the highest ranking dermatopathologists worldwide and is surely qualified for a professorship.  Considering her substantial scientific record, she would probably have gained a full professorship in Europe years ago. . . .

118.    Catherine M. Stefanato, M.D., Consultant in Dermatopathology at the St. John's

Institute of Dermatology at St. Thomas' Hospital in London, wrote, in relevant part:

Dr. Lazova's contagious enthusiasm as a physician-dermatopathologist and her very pleasant personality in her role as Director of the Dermatopathology Fellowship Program is very much appreciated by all of the US and International trainees in dermatopathology, who admire her and respect her greatly.

Although I myself am not in a position to hire Dr. Lazova as a full Professor in my Institution, if I were offered such an opportunity, I would do so without hesitation.

119.    Dr. Kristina Semkova, Clinical Fellow of Dermatopathology at the St. John's

Institute, added, in relevant part:

Dr. Lazova is one of the most renowned and highly valued experts in the field of Dermatopathology on a national and international level. . . .

. . . .

I strongly believe that Dr. Lazova's outstanding achievements in the field of Dermatopathology, her worldwide recognition and superior expertise merit a promotion to the position of a Professor.  Each Institution in the world would be proud to have such an excellent scientist and clinician and would, with no doubt, honor them with this well-deserved title. . . .

120.    Dmitry V. Kazakov, M.D., Ph.D., Professor of Pathology and Director of

Dermatopathology at Charles University in Prague, Czech Republic, wrote, in relevant part:

Dr. Lazova belongs [among the] top experts in the field of dermatopathology, both in the US and internationally.  Dr. Lazova is recognized not only as a leader in the field of dermatopathology, but also as a superior clinician and clinical teacher . . . .
. . . .

In summary, Dr Lazova is widely regarded by her peers in the international community of pathologists and dermatologists as one of the most outstanding dermatopathologist[s] in our generation.

121.    Gürkan Kaya, M.D., Ph.D, Head of the Dermatopathology Unit and the University

Hospital of Geneva, Switzerland, wrote, in relevant part:

[Dr. Lazova's] academic achievements show that [she] is one of the best dermatopathologists in the United States and internationally.  She has attained national and international recognition as a superior clinician and clinical teacher in the field of Dermatopathology. . . .  She is considered an expert in the field of melanocytic lesions and Spitzoid neoplasms in particular.  Under her leadership as Director, the Yale Dermatopathology Fellowship is considered as one of the best programs in the world.  Dr. Lazova is extremely collegial and professional in all that she does and her work is invaluable. . . .

122.     Dr. Heinz Kutzner of the Dermatopathologie Friedrichshafen in Germany described

Dr. Lazova as "one of the pillars of international dermatopathology [who] deserves highest merits."

He added:

> [B]ased on her outstanding academic achievements and her superb engagement both
> in [the ISDP] and beyond, I am ranking her among the top 5% of dermatopathologists
> nationwide (US) and worldwide. . . .
>
> . . . .
>
> [Dr. Lazova] has been keeping up this high level of successful engagement in the
> field (both teaching and researching) for more than the past 15 years, and is still
> doing so.  Something, which is most unusual in our field where most colleagues tire
> after a few years.  I know that Dr. Lazova is continuing to make outstanding
> contributions to dermatopathology, and certainly will do so during the years to come.

123.     Dr. Maria-Teresa Fernandez Figueras of the Department of Pathological Anatomy at

the Universidad Autónoma de Barcelona in Spain wrote, in relevant part:

> [Dr. Lazova] is, in my opinion, one of the World leading personalities in the field of
> Dermatopathology, and she is destined to be even more important in the upcoming
> years. . . .
>
> . . . .
>
> With a warm smile on her face and her fluent communication skills she can
> easily organize an enjoyable and highly didactic session for the residents, th[e]n
> report the results of a complex study or discuss the economical issues of a Society. I
> have been always impressed by her enthusiastic attitude towards her work that
> inspires other American dermatopathologists and her interpersonal skills have
> allowed her to develop strong professional and personal relationships with
> dermatopathologists from other countries.
>
> . . . I do not think that there are many other Professionals at her level and I am
> surprised that she has not achieved the position of Full Professor, yet.

124.     Reuven Bergman, M.D., Director of the Department of Dermatology at the Rambam

Health Care Campus and Professor at the Technion-Israel Institute of Technology in Haifa, Israel,

wrote, in relevant part:

Rossitza is currently among the leading dermatopathologists in the US and known internationally.

. . . .

On the basis of her research, teaching, mentorship, professional public activities and leading international role as an expert and researcher on Spitz nevi and Spitzoid melanomas, I have every reason to believe that she would have been a strong candidate for promotion to a full professorship in my institution.

125.    Andrea Gat, M.D., Head of Dermatopathology at Tel Aviv Sourasky Medical Center in Israel, described Dr. Lazova as "one of the top experts, especially in the fields of melanocytic and spitzoid melanocytic lesions - the main focus of her research activities."  Dr. Gat added: "On numerous occasions I have sent her difficult cases of spitzoid melanocytic neoplasms for her expert opinion."

126.    Notwithstanding the Review Committee's finding that Dr. Lazova's gender discrimination complaint "had further strained the relationship between Dr. Lazova and the senior faculty in Dermatology in the two years preceding the vote of 2014," the very same senior faculty members who had those "strained relationship[s]" with Dr. Lazova were responsible for considering her 2015 application for promotion.

127.    On November 16, 2015, Dr. Lazova was informed that, once again, she was not being promoted to full professor.

VI.    **LEGAL CLAIMS**

**FIRST CLAIM FOR RELIEF:**
**RETALIATORY DENIAL OF PROMOTION,**
**IN VIOLATION OF TITLE VII, 42 U.S.C. § 2000e**

128.    Paragraphs 1 through 127 are hereby reincorporated the same as if fully pled in this First Count.

129.    Dr. Lazova engaged in protected activity insofar as she complained, including in

an administrative complaint to the CHRO, that the 2012 denial of her application for promotion

constituted sex discrimination.

130.    Dr. Lazova's complaints of sex discrimination made a difference in Yale's

decision not to promote her to the rank of full professor, in violation of Title VII.

131.    Yale's conduct in this regard was willful and/or in reckless disregard to

Dr. Lazova's right to equal treatment.

132.    As a result of Yale's conduct, Dr. Lazova has suffered economic harm, emotional

harm, and reputational harm.

### SECOND CLAIM FOR RELIEF:
### RETALIATORY DENIAL OF PROMOTION,
### IN VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT,
### CONN. GEN. STAT. § 46a-60(a)(4)

133.    Paragraphs 1 through 127 are hereby reincorporated the same as if fully pled in

this Second Count.

134.    Dr. Lazova engaged in protected activity insofar as she complained, including in

an administrative complaint to the CHRO, that the 2012 denial of her application for promotion

constituted sex discrimination.

135.    Dr. Lazova's complaints of sex discrimination made a difference in Yale's

decision not to promote her to the rank of full professor, in violation of the CFEPA.

136.    Yale's conduct in this regard was willful and/or in reckless disregard to

Dr. Lazova's right to equal treatment.

137.    As a result of Yale's conduct, Dr. Lazova has suffered economic harm, emotional

harm, and reputational harm.

* * *

WHEREFORE, Dr. Lazova respectfully prays that this Court take jurisdiction over this case; grant judgment against the defendant; and award the following relief:

a.   A declaration that the defendant's refusal to promote the plaintiff to full professorship violated Title VII and the Connecticut Fair Employment Practices Act;

b.   An injunction ordering the defendant to promote the plaintiff to the rank of "Professor of Dermatology and of Pathology" at Yale Medical School;

c.   Economic damages;

d.   Non-economic damages;

e.   Reputational damages;

f.   Punitive damages;

g.   Reasonable attorney fees and costs;

h.   Prejudgment interest, pursuant to Connecticut law, Conn. Gen. Stat. § 37-3a; and

i.   Such other equitable relief as the Court deems appropriate.

**RESPECTFULLY SUBMITTED,**
**THE PLAINTIFF**

By:   */s/ Nina T. Pirrotti*
Nina T. Pirrotti (*ct26792*)
Joshua R. Goodbaum (*ct28834*)
GARRISON, LEVIN-EPSTEIN, RICHARDSON,
   FITZGERALD & PIRROTTI, P.C.
405 Orange Street
New Haven, Connecticut  06511
Tel.:  (203) 777-4425
Fax:  (203) 776-3965
npirrotti@garrisonlaw.com
jgoodbaum@garrisonlaw.com

COUNSEL FOR THE PLAINTIFF